O

## United States District Court
## Central District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMUEL BRASLAU; RAND J. CHORTKOFF; and STUART E. RAWITT,<br><br>  Defendants. | Case № CV 14-01290-ODW (AJWx)<br><br>**ORDER DENYING DEFENDANT SAMUEL BRASLAU'S MOTION TO STAY THE CASE [59]** |

### I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") filed the present civil case against Defendants Samuel Braslau, Rand Chortkoff, and Stuart Rawitt in parallel with a criminal case brought against the same Defendants by the Department of Justice. The jury in the criminal case against Braslau returned a guilty verdict, which Braslau is currently appealing. After Braslau's criminal conviction, the SEC filed a Motion for Summary Judgment in the present civil case based on collateral estoppel. (ECF No. 48) In response, Braslau requested that the Court stay the civil case entirely until his criminal appeal resolves. (ECF No. 59.) The Court construes

Braslau's request as a Motion to Stay the Case and **DENIES** the Motion for the reasons discussed below. (*Id.*) [1]

## II. FACTUAL BACKGROUND

This case arises from an investment scheme based around a movie called, ironically enough, *The Smuggler*. (Mot. for Summary Judgment ["MSJ"] 1.) The SEC alleges that Braslau, an attorney, raised over $1.8 million from more than sixty investors through the fraudulent sale of securities in two companies he controlled—Mutual Entertainment, LLC and Film Shoot, LLC. (Compl. ¶¶ 4–5.) Co-defendants Rand Chortkoff and Stuart Rawitt recruited investors through a boiler room call center, promising high returns on passive investments in *The Smuggler*. (MSJ 1–2.) Braslau drafted the documents used in these solicitations, which included statements that he allegedly knew were false. (*Id.* 2.) For example, Braslau knew that the amounts paid to sales agents exceeded the amounts represented to investors in the private placement memorandum that he drafted. (*Id.*)

On February 20, 2014, the SEC filed the present Complaint against Braslau, Chortkoff, and Rawitt. (ECF No. 1.) In it, the SEC alleges that Braslau committed fraud in the offer of sale of securities in violation of Section 17(a) of the Securities Act, and fraud in connection with the purchase or sale of securities in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act. (Compl. ¶ 9.) The SEC seeks a permanent injunction against any future violations of these rules and statutes. [2] (Compl. 18–19.) On the same day the Complaint was filed, a criminal indictment charging Braslau with federal wire fraud, mail fraud, and violation of false statement statutes was unsealed. (MSJ 3; *see also United States v. Braslau*, CR. No. 14-00044-RGK-1 (C.D. Cal.).) The facts underlying the indictment are almost

---

[1] After carefully considered the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Although the SEC initial sought civil penalties and disgorgement of all ill-gotten gains from Braslau, it has since dismissed those forms of relief because Braslau is serving an eighty-seven month prison sentence and was ordered to pay $1,618,697 in restitution. (MSJ 1.)

identical to those underlying the present civil claim. (MSJ 3–4.) On May 20, 2014, the Court stayed the civil case pending completion of the criminal proceedings against Braslau. (ECF No. 14.) On November 14, 2014, a jury convicted Braslau of eleven counts of mail fraud, five counts of wire fraud, and one count of making a false statement. (CR ECF No. 123.) Braslau filed a Notice of Appeal on May 7, 2015. (*Id.*, ECF No. 175.)

On August 10, 2015, this Court received notice of the jury verdict in Braslau's criminal case. (ECF No. 44.) On August 27, 2015, the SEC filed a Motion for Summary Judgment as to all claims against Braslau. (ECF No. 48.) Braslau, by then incarcerated at the United States Penitentiary, Lompoc, did not oppose the motion. On November 3, 2015, the Court issued an Order to Show Cause as to why it should not grant the SEC's motion for summary judgment in full. (ECF No. 54.) The SEC filed proof of service, showing that it delivered the Order to Show Cause to Braslau in prison. (ECF No. 55.) On November 18, 2015, Braslau timely responded to the Court's order, stating that he did not receive a copy of the Motion for Summary Judgment and further requesting a stay on the Motion until the completion of his appeal. (ECF No. 59.) In this reply, Braslau used a different address than the one used by the SEC to serve the Motion for Summary Judgment. (*See* Mot. Not. of Service.) The SEC immediately filed a reply, opposing the request for a stay, and reiterating its position that it properly served the Motion for Summary Judgment on Braslau. (ECF No. 60.) However, in an abundance of caution, the SEC again served the Motion for Summary Judgment on Braslau using the new address. (ECF No. 60 at 2.)

### III.  LEGAL STANDARD

While a district court may stay civil proceedings pending completion of a parallel criminal case, it is not required to do so by the Constitution. *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). While a stay is an extraordinary remedy, a court may decide to do so in its discretion when the interests

of justice require it. *Id.* at 899. In deciding whether to issue a stay, the court should consider six factors: (1) the extent to which a defendant's Fifth Amendment rights are implicated; (2) the plaintiff's interest in proceeding expeditiously with the litigation and whether a delay causes any potential prejudice to the plaintiff; (3) whether the proceedings impose any burden on the defendant; (4) judicial efficiency; (5) nonparty interests; and (6) the public's interest in the pending civil and criminal litigation. *Id.* at 902–03.

## IV. DISCUSSION

Braslau contends that the Court should stay the civil proceedings against him until his criminal appeal is completed. (Mot. at 1–2.) Specifically, he argues that any response to the SEC's Motion for Summary Judgment would violate his Fifth Amendment right against self-incrimination, as any statement he makes could be used against him in the criminal appeal or during a new trial. (*Id.* at 2.)

### A. Implication of Fifth Amendment Rights

When deciding whether to grant a stay of civil proceedings, the Court first considers the extent to which the defendant's Fifth Amendment rights are implicated. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). Braslau's arguments in support of the requested stay strongly emphasize this factor.

"A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 326. While a defendant's Fifth Amendment right is an important consideration, "it is only one consideration to be weighed against others." *Id*. However, courts do recognize that the Fifth Amendment factor weighs heavily when a party under indictment for a serious offense is required to simultaneously defend a civil action involving the same matter. *Id*.

Braslau's privilege against self-incrimination does not necessarily mandate a halt in the civil proceedings. Where the trial in the parallel criminal proceeding has concluded, and a conviction is challenged on appeal, courts are generally more

reluctant to stay parallel civil proceedings. *See Milton Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 204 (1989) ("[T]he appeal process is an uncertain, potentially long-ranging, process. Only unusual circumstances would justify an order staying a post-conviction civil proceeding."); *see also Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1215 (8th Cir. 1973) (upholding the denial of an indefinite stay of civil proceedings sought after conviction but during appeal); *Doe v. City of San Diego*, No. 12-CV-689-MMA-DHB, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012)(denying an indefinite stay of civil proceedings sought during a criminal appeal because the defendant failed to establish the necessity of the stay).

Here, there is no question that Braslau's Fifth Amendment rights are implicated by allowing this case to proceed while his criminal conviction is being appealed, as both cases involve almost identical facts. The Motion, though, turns upon the *extent* to which his Fifth Amendment rights are implicated. *Keating*, 45 F.3d at 324. Braslau is appealing his conviction, and therefore it is possible that statements he makes in the course of the civil proceeding could be used against him in a possible retrial of the criminal case. (*See* ECF No. 48.) However, the possibility of a retrial appears remote. The Court presiding over Braslau's criminal trial noted that his appeal does not raise any "substantial question of law or fact likely to result in reversal [or] an order for a new trial." (CR ECF No. 198.)

Additionally, there are remedies short of an indefinite stay that could serve to protect Braslau even if he is retried. *See O. Thronas, Inc. v. Blake*, 2010 WL 931924, at *3 (D. Hawai'i Mar.10, 2010)(stay unnecessary, as defendants' fifth amendment rights could be protected through less drastic means such as asserting the privilege on a question by question basis and implementing protective orders). Braslau has already testified during his criminal trial, and likely addressed many of the issues that he will be dealing with in the civil case. He can therefore protect his Fifth Amendment rights through other, less drastic measures, like those discussed in *O. Thronas*. *See Doe*,

2012 WL 6115663, at *2. The Court therefore finds that this factor does not weigh heavily in favor of granting the requested stay.

**B.     Prejudice to the SEC**

The Court next considers whether a stay might result in any prejudice to the plaintiff. *See Keating*, 45 F.3d at 325. Braslau contends that this factor weighs in his favor because all of the SEC's rights "would be reserved and held in abeyance until the conclusion" of the criminal appeal. (Mot. at 2.) The SEC failed to address this factor in its response.

The events underlying this case began in April 2011 and continued through August 2013. (*See* ECF No. 48-1 at 1.) The SEC filed its Complaint on February 20, 2014, and the case was stayed until the conclusion of Braslau's criminal trial. (ECF No. 14.) On November 14, 2014, the jury reached a verdict, and on May 07, 2015, Braslau filed a Notice of Appeal. (CR ECF Nos. 123, 175.)

The Court recognizes that as the agency responsible for enforcement of the securities laws, the SEC must be able to respond quickly to securities violations and seek prompt judicial redress. *See S.E.C. v. Loomis*, No. 2:10–CV–00458–KJM–KJN, 2013 WL 4543939, at *2 (E.D. Cal. Aug. 27, 2013). The Court also recognizes that a stay would increase the odds that key witnesses may become unavailable, that their memories will fade, and that documents in their possession may be lost. Braslau requests that the Court stay the case until the completion of his appeals process. Given the lengthy appeals process, the stay already previously ordered in the civil action, and the amount of time that has passed since the events at issue took place, the Court finds that the SEC will suffer prejudice if the stay is extended until the resolution of the appeal. *See S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) (noting that the SEC has a strong interest in proceeding expeditiously with litigation). Accordingly, this factor weighs in favor of denying a stay.

### C. Burden on Braslau

The next factor considered is the burden that any aspect of the civil proceedings might impose on the defendant. *See Keating*, 45 F.3d at 325. Braslau argues that he would be greatly burdened if the present case proceeds because he intends to assert his Fifth Amendment privilege, and therefore will not be able to present any viable defense. (Mot. at 2.)

As discussed above, Braslau has no constitutional right to a stay of this civil proceeding pending completion of his criminal appeal. *See Keating*, 45 F.3d at 326. Furthermore, Braslau may assert his Fifth Amendment privilege on an issue-by-issue basis throughout the proceedings, giving him the opportunity to defend himself even while asserting the privilege. Lastly, as noted above, the Court presiding over Braslau's criminal trial noted that his appeal does not raise any "substantial question of law or fact likely to result in reversal [or] an order for a new trial." (CR ECF No. 198.) Therefore, though Braslau may be slightly prejudiced by not granting a stay, the degree of prejudice is not great enough to outweigh the other factors.

### D. Judicial Efficiency

This factor usually weighs against granting a stay because "the court has an interest in clearing its docket." *Molinaro*, 889 F.2d at 903. Here, Braslau requests an indefinite stay to this civil case, which will directly and negatively impact the Court's interest in efficiently managing its docket. Accordingly, this factor weighs against granting a stay.

### E. Nonparty Interests

Courts next consider whether the interests of nonparties will be impacted by the issuance of the stay. *See Keating*, 45 F.3d at 325. Neither Braslau nor the SEC have argued that any nonparties would be implicated by the issuance of a stay in the present case. This factor therefore does not weigh in either party's favor.

**F.     Public Interest**

The final factor to be considered is the public's interest in the pending criminal and civil litigation. *See Keating*, 45 F.3d at 325. Braslau argues that granting a stay furthers the public interest by "assuring all citizens and all defendants [that] their legal rights will not be terminated and curtailed by any zealous and hurried" government investigation. Although the public certainly has an interest in fair proceedings, granting a stay to this case will not impugn that interest. *See City of San Diego*, 2012 WL 6115663, at *5. This factor therefore does not weigh in favor or either granting or denying a stay.

After analyzing the six factors laid out by the Ninth Circuit, the Court determines that Braslau has failed to establish the necessity of staying the present case. Braslau's Fifth Amendment rights are not sufficiently implicated to warrant a lengthy stay, and the Court has determined that such a stay would prejudice the SEC and harm the Court's attempt to manage its docket efficiently.

## V.     CONCLUSION

For the reasons discussed above, the Court concludes that a stay is neither necessary nor appropriate. Accordingly, the Court **DENIES** Braslau's Motion to Stay the present case. (ECF No. 59.)

///

///

///

1  In recognition of Braslau's assertion that he did not receive the SEC's Motion
2  for Summary Judgment, the Court extends the deadline for filing an opposition to
3  **January 7, 2015**.  The SEC must then file any reply papers by **January 14, 2016.**
4  According to the SEC, it again served the Motion for Summary Judgment on Braslau,
5  using the address indicated in Braslau's Motion to Stay.  The Court orders the SEC to
6  promptly serve this Order on Braslau at 3705 West Farm Road, Lompoc, CA 93436.
7  **IT IS SO ORDERED.**

9  December 29, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**