O

# United States District Court
# Central District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>    v.<br><br>SAMUEL BRASLAU, RAND J. CHORTKOFF, and STUART E. RAWITT,<br><br>                Defendants. | Case No. 2:14-cv-01290-ODW-AJW<br><br>**ORDER DENYING MOTION TO SET ASIDE ORDER GRANTING MOTION TO SUBSTITUTE EXECUTOR [70]** |

## I. INTRODUCTION

Tammie J. Barnum, as executor of the Estate of Rand J. Chortkoff ("the executor"), seeks an order setting aside this Court's previous Order Granting Plaintiff Securities and Exchange Commission's Motion to Substitute Executor (ECF No. 58). (ECF No. 70.) For the reasons discussed below, the Court **DENIES** the executor's Motion.[1]

///

///

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

On May 5, 2015, Defendant Rand J. Chortkoff died in Los Angeles, California. (Del Greco Decl. ¶ 2.) On August 10, 2015, intervenor United States of America informed this Court of Chortkoff's death, as well as the resolution of its criminal cases against the other defendants in this action. (ECF. No. 44.)

On August 14, 2015, the SEC filed a Motion to Substitute Executor pursuant to Federal Rule of Civil Procedure 25(a) to substitute the estate of Defendant Chortkoff (the "Chortkoff Estate") as a party defendant. (ECF No. 46.) On October 6, 2016, the Court denied the SEC's Motion, explaining that the SEC had not complied with Rule 25(a) because it had neither formally suggested Chortkoff's death on the record nor properly served the suggestion.. (ECF No. 52.)

On November 16, 2016 the SEC filed a new Motion to Substitute Executor (ECF No. 56), in which it successfully corrected both errors. As such, the Court granted the SEC's Motion to Substitute Executor before the executor had an opportunity to file an opposition. (ECF Nos. 57, 58.)

On November 30, 2016, the executor filed an Opposition to the Motion to Substitute Executor (ECF No. 62), and on December 7, 2016 the SEC filed a Reply (ECF No. 64). On December 15, the executor filed a "Supplemental Opposition" to the Motion to Substitute Executor (ECF No. 65) without seeking leave from the Court, in violation of Local Rule 7-10.[2]

On January 8, 2016, the executor filed a Motion to Set Aside Order re: Motion to Substitute Executor; the Motion was stricken on January 11, 2016, for failure to comply with the Local Rules. (ECF Nos. 68, 69.) Later that day, the executor refiled its Motion. (ECF No. 70.)

As such, the Court will adjudicate the Motion to Set Aside (ECF No. 70) based

---

[2] Because the executor neither sought nor obtained the prior written order required by the Local Rule, her Supplemental Opposition is hereby stricken from the record. *See*, *e.g.*, *Saher v. Norton Simon Museum of Art at Pasadena, et al.*, 862 F. Supp. 2d 1044, 1045 n.1 (C.D. Cal. 2012) (granting motion to strike improper sur-reply).

on the briefing already filed with the Court—namely, the SEC's brief in support of its Motion to Substitute Executor (ECF No. 56), the executor's Opposition (ECF No. 62), and the SEC's Reply (ECF No. 64). The Motion is now before the Court for consideration.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits a party to seek reconsideration of a final judgment or court order. The Central District of California Local Rules elucidates the proper bases on which a party may seek reconsideration:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18. Additionally, "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

## IV. DISCUSSION

In its Motion, the executor seeks to set aside this Court's previous Order Granting the SEC's Motion to Substitute, arguing that it did not have a chance to fully brief the Motion because the Court decided the matter before the executor had an opportunity to file an opposition. The Court will now address the issues raised in connection with the executor's opposition. (ECF No. 60.)

In the underlying Motion, the SEC seeks to substitute the Chortkoff Estate as a party defendant.[3] *See e.g., McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 836–37 (3rd

---

[3] It should be noted that the SEC's Motion is timely under Rule 25(a), which provides that a motion for substitution must be made within 90 days "after service of a statement noting the death." The Court made clear in its October 6, 2016 Order that "the 90 day period under Rule 25(a) has not

Cir. 1994) (recognizing litigant's ability to substitute party defendant pursuant to Rule 25 and reversing district court's opinion that took a restrictive view of Rule 25). The substitution of the Chortkoff Estate as a party defendant is necessary and appropriate as it will allow the SEC to continue to press its claims that Chortkoff violated federal securities laws and to seek disgorgement of his ill-gotten gains. Upon substitution, the Chortkoff Estate would step into the same position occupied by Chortkoff immediately prior to his death. *See Hilao v. Estate of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996) (affirming district court order holding representatives of the Estate of Ferdinand E. Marcos in contempt for violating terms of a preliminary injunction that had been issued against estate for, inter alia, negotiating for the sale of certain assets covered by the injunction).

In its Opposition to the Motion, the executor argues that the probate court has exclusive jurisdiction over any matter relating to the administration of Chortkoff's estate. Indeed, if this Court did lack subject-matter jurisdiction, relief from an order or judgment under Rule 60(b)(4) would be appropriate. *See Wages v. I.R.S.*, 915 F.2d 1230, 1234 (9th Cir. 1990). However, this Court has federal subject matter jurisdiction over this action because it is brought under the federal securities laws. Federal district courts "have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency of officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

While it is true that courts have created an exception to federal subject matter jurisdiction for certain probate matters, the so-called "probate exception" is "narrow" and of "distinctly limited scope." *Marshall v. Marshall*, 547 U.S. 293, 305 (2006). For the probate exception to apply, the matter at issue must be "purely probate in nature" and/or sufficiently related to probate to warrant the preclusion of federal court

---

begun." (ECF No. 52.) As such, the 90 day window commenced on November 16, 2016, when it formally suggested death on the record. (ECF No. 56.)

jurisdiction. *Goncalves v. Rady Children's Hosp. San Diego*, 65 F. Supp. 3d 985, 992 (S.D. Cal. 2015).

*United States v. Tyler* presented a set of facts analogous to those here. 528 F. App'x 193, 197 (3rd Cir. 2013). In 2002, the IRS notified David Tyler that he owed the IRS $436,849 in back taxes. In 2003, Tyler transferred title to real property he owned worth $326,128—the only asset which could have been used to satisfy his unpaid tax liability—to his wife, for $1. In 2004, the IRS filed a notice of lien on the property. In 2006, Tyler died without having satisfied his tax liability; in 2007, his wife died, leaving the real property to her son, the co-executor of her estate. The IRS brought suit against the executors of the Tyler estate, alleging that both transfers of the real property—from David Tyler to his wife, and from her to her son—were fraudulent. The district court granted the IRS's motion for summary judgment and, after the executors appealed, the Third Circuit affirmed the district court's order.

The Third Circuit in *Tyler* correctly read *Marshall* to hold that the probate exception does not apply unless a federal court endeavors to probate or annul a will, administer a decedent's estate, or assume *in rem* jurisdiction over property that is in the custody of the probate court. *See id*. The district court in *Tyler* had done none of those things. "In fact, its judgment was not against any *res* held by the state probate court; it was a judgment *in personam* against Appellants for their failure to pay the government its share of the proceeds from the sale of the Property. The District Court's judgment did not remove any property from the probate court's control, and its exercise of jurisdiction therefore did not qualify for the probate exception." *Id.*

The same is true here. The SEC does not seek to have this Court take any of the types of action proscribed by *Tyler*. It is not asking the Court to annul a will, administer the estate or to remove property from Chortkoff's estate. Rather, the SEC is merely asking the Court to name the deceased defendant's estate as a party so it can pursue its claim for the disgorgement of the ill-gotten gains the defendant obtained from his fraudulent conduct, as alleged in the SEC's complaint. That the SEC would

ultimately seek this disgorgement from the probate estate does not mean that the estate should not be a party or that this Court lacks jurisdiction over the estate. Substituting the estate as a party does not require this Court to do anything with the *res* of that estate or to otherwise interfere with the executor's administration of that estate. Indeed, the estate property will not be pursued unless and until the SEC obtains a judgment from this Court, at which point the SEC can then enforce that judgment against the estate in probate if necessary. Therefore, the probate exception has no application here. The estate may be substituted as a party in this federal court action.

Further, it is of no import that this enforcement action was pending prior to Chortkoff's death. A claim survives a party's death if it is remedial rather than punitive. *See SEC v. Wyly*, 860 F. Supp. 2d 275, 276 (S.D.N.Y. 2012). Here, the sole relief the SEC would seek against Chortkoff's estate is disgorgement; its claim for injunctive relief enjoining further violations of the law and its claim for civil penalties to punish the wrongdoing are no longer viable since the defendant has passed away. And this claim for disgorgement is remedial in nature because it seeks to prevent a party from being unjustly enriched by securities fraud. *See id*. at 278–79; *see also Zacharias v. SEC*, 569 F.3d 458, 471–72 (D.C. Cir. 2012) ( "an order to disgorge is not a punitive measure; it is intended primarily to prevent unjust enrichment"); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (purpose of disgorgement is "to deprive a wrongdoer of unjust enrichment, and to deter others"). Thus, the SEC's disgorgement claim against Chortkoff survives his death. *See Wyly*, 860 F. Supp. 2d at 281–84 (holding that SEC claim for disgorgement against deceased defendant is remedial and thus survives death).

/ / /

/ / /

/ / /

## V. CONCLUSION

For the reasons discussed above, the executor's Motion to Set Aside Order Granting Motion to Substitute Executor is **DENIED**. (ECF No. 70.)

**IT IS SO ORDERED.**

May 2, 2016

```
                    _____
                         OTIS D. WRIGHT, II
                    UNITED STATES DISTRICT JUDGE
```